IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| ALVIN L. SUTHERLIN, JR., | |
| Plaintiff, | Case No. 4:15-cv-00037 |
| v. | **MEMORANDUM OPINION** |
| LIEUTENANT J.W. SMITH, SERGEANT H.S. RICHARDSON, OFFICER N.M. SLOVER, OFFICER M.C. PACE, OFFICER R.C. LANDRUM, OFFICER D.C. LANCASTER, OFFICER W.C. SHIVELY, OFFICER W.R. MERRILL, OFFICER J.D. DIXON, and OFFICER L.D. LAND, | By: Hon. Jackson L. Kiser<br>Senior United States District Judge |
| Defendants. | |

This matter is before the Court on Defendants' Rule 12(b)(6) motion to dismiss. The parties have fully briefed the motion, and I have reviewed the relevant filings and arguments.[1] For the reasons stated herein, I will grant Defendants' motion in part and deny it in part.

Before explaining my ruling, I must remind the parties of this Court's Pretrial Order and this District's Rules. For those motions that are to be briefed, generally there are to be no more than three briefs: (1) the movant's supporting brief, which is to accompany the motion, (2) the nonmovant's opposition brief, and finally (3) the movant's reply brief. (Pretrial Order at pgs. 1–2, Nov. 5, 2015 [ECF No. 9].) W.D. Va. Civ. R. 11(c)(1). The parties exceeded this limitation in briefing the motion to dismiss. They not only overlooked the Court's Order and the District's Rules but, in doing so, also addressed matters beyond the focus of Defendants' motion, made the

---

[1] On brief, Plaintiff makes various requests to order Defendants' disclosure of potential evidence. Argument over a motion to dismiss is an inappropriate forum for those requests, and I have no occasion to consider them at this stage in the litigation.

matter less wieldy, and needlessly drew upon the Court's time and resources. The parties are to obey applicable Orders and Rules. Further failures to do so may result in sanctions.

I. **STATEMENT OF FACTS AND PROCEDURAL BACKGROUND**[2]

On September 25, 2013, Alvin L. Sutherlin, Jr., ("Plaintiff") resided on the first floor of a duplex at 505 Jefferson Street in Danville. (See Compl. ¶¶ 6, 8, Sept. 24, 2015 [ECF No. 2].) Plaintiff "occup[ied] the whole [first] floor as [his] residence." (Id. ¶ 8.) He kept an "office area" in the "[first] room on the left" upon entering the duplex's first floor "through the front door." (See id. ¶ 7.) Plaintiff's two sons resided on the other side of the duplex's first floor. (Id. ¶ 8.) The duplex had four rental units on the second floor, which was operated as a rooming house. (See id. ¶¶ 7, 8.) Plaintiff was the property manager for the second-floor units. (See id. ¶ 7.) He managed the units for Alice Carson, the owner. (See id.) In addition, Plaintiff ran his own business, servicing computers and laptops out of his residence. (See id. ¶ 15.) Michele Owens and her teenage son resided in one of the second-floor units. (See id. ¶ 7.)

At 7:28 p.m. on September 25, 2013, Sergeant H.S. Richardson of the Danville Police Department applied to a magistrate for a warrant to search the duplex "in relation to an offense" of "Possession with Intent to Distribute Marijuana in Violation of Virginia State Code § 18.2-248.1." (Id. ex. pg. 3 [ECF No. 2-1].) According to Sergeant Richardson, within the past seventy-two hours, a confidential informant[3] had been "inside the first room to the left on the first floor" of the duplex, had "seen a quantity of marijuana and scales," and had informed that "marijuana has been sold from that residence." (Id. ex. pg. 4.) Sergeant Richardson wished to

---

[2] At this stage, the facts are recited in the light most favorable to Plaintiff, and reasonable inferences are drawn in his favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[3] Sergeant Richardson stated that the confidential informant "ha[d] proven to be reliable in the past to the seizure of narcotics and/or wanted persons." (Compl. ex. pg. 4.)

- 2 -

search this room[4] for "[m]arijuana, scales, monies, baggies, digital media devices, documents, paraphernalia, and any instrumentalities associated with the illegal possession and/or distribution of marijuana at 505 Jefferson Street." (Id.) Finding probable cause of criminal evidence, the magistrate issued the search warrant at 7:33 p.m. (Id. ex. pg. 1.)

Shortly before 8:30 p.m., ten officers of the Danville Police Department entered the duplex's first floor without knocking or announcing their presence. (Id. ¶ 6.) Upon the officers' entry, Plaintiff and Ms. Owens "came out from [Plaintiff's] kitchen into [his] hallway to see what was going on." (Id. ¶ 7.) The officers pointed their guns at the two and commanded that they stop. (Id.) Plaintiff responded that this was his home and that the officers had "just walked in." (Id.) Two male officers said that they had a search warrant. (Id.) Officer M.C. Pace asked Plaintiff to remain calm and to remain put. (Id.) She explained that the warrant was "not for [Plaintiff's] place" but for the office area. (Id.)

Sometime later, Plaintiff and Ms. Owens asked the officers about the warrant and asked to see it. (Id.) Sergeant Richardson responded, "Alright I'm just telling you that's it everything [sic] good, we're here we're [sic] a search warrant I don't know we got someone in handcuffs, but this was signed hours ago." (Id.) He removed a folded piece of paper from his pocket, held it up, and placed it back in his pocket. (Id.) Sergeant Richardson indicated that this sufficed for proper service. (Id.) Again, Plaintiff asked to see the warrant, but Officer D.C. Lancaster told him to wait. (Id. ¶¶ 7, 8.) For over an hour, Plaintiff waited in the hallway but "was never handed the warrants and/or affidavits by any Officer at any time." (Id. ¶ 8.)

---

[4] Sergeant Richardson described "[t]he place, person or thing to be searched" as follows: "505 Jefferson Street Danville Va multiple unit dwelling and all persons present. . . . . Once one enters the structure, the room to be searched will be the first to the left on the first floor with double doors to go through." (Compl. ex. pg. 3.)

- 3 -

While Plaintiff waited in the hallway, Officer Lancaster seized $554.00 cash from Plaintiff's person and handed it to Officer R.C. Landrum. (See id. ¶ 9.) Of that sum, $4.00 was Plaintiff's. (Id.) The $550.00 consisted of tenants' rent payments, which Plaintiff had collected for Mrs. Carson. (Id.) Plaintiff informed the officers that it was rent money. (Id.) Officer Landrum took the money into the office area and told other officers that Plaintiff had identified it as rent money. (Id.) One officer yelled out, "If it is in your pocket, then it belongs to you." (Id.)

Almost immediately after the entry into the duplex, several officers went into the office area. (See id. ¶ 12.) Brittney Logan had been the only person in the room, and she was "downloading data" on her laptop when the officers came in. (Id.) The officers told her "to get on the ground," handcuffed her, and led her outside.[5] (Id.) An officer asked if she was making movies, and she denied it. (Id.) Officer L.D. Land approached Ms. Logan with a jacket and asked if it was hers. (Id.) When she affirmed, the officer informed her that "she was being charged with possession of marijuana because of one marijuana cigarette which she had in her jacket pocket." (Id.)[6] "That was the largest amount of marijuana that was found in the room." (Id.)

While in the office area, Officer Land and Sergeant Richardson came upon "a box of mix caliber ammo." (See id. ¶ 13.) The ammunition was Mr. Carson's, who left it in Plaintiff's care. (Id.) Although "not stated as items to be seized under the warrant," the officers seized the ammunition as well as "dies for Reloading different caliber of ammo anyway." (Id.) These items remain in police custody. (Id.)

---

[5] The Complaint specifies that Officer W.R. Merrill led Ms. Logan outside. (Compl. ¶ 12.)

[6] Sometime later, Officer Land took Ms. Logan to the precinct station and had her sign a statement consisting of Officer Land's transcription of Ms. Logan's verbal answers to the former's questions. (See Compl. ¶ 13.) Officer Land did not allow Ms. Logan to read the statement, but she signed it as instructed. (Id.)

According to the "Search Inventory and Return," the officers seized the following items under the initial search warrant:

1. 554.00 currency
2. Digital scales
3. Plastic bag containing another plastic bag of green plant material
4. Bag of green plant material
5. Metal grinder
6. Assorted caliber ammunition
7. .177 BB handgun
8. HTC smart phone
9. Motorola smart phone
10. Sanyo flip phone
11. Kyocera cell phone
12. Samsung cell phone.

(Id. ex. pg. 2.)

When in the office area, the officers "quickly abandoned their search for marijuana and began confiscating DVDs and CD disc[s]." (Id. ¶ 14.) They began to inventory the discs, counting them, until, shortly before 10:00 p.m., they obtained a warrant to seize them. (Id.) Finding probable cause of evidence of "[p]ossession with intent to distribute video movies without the true manufacturer named in violation of VA codes 59.1-41.3, 59.1-41.4, 59.1-41.5, and 59.1-41.6," the magistrate issued a warrant to seize

> DVD's both burned and unburned, CD's both burned and unburned, laptop computers, desktop computers, monitors, recording devices of any type, digital media storage in all forms to include but not limited to jump drives, memory cards, and tablet devices. All DVD movies, even those . . . which appear to be legitimate, used as originals for recording unlicensed DVD movies, any and all digital devices present which may be associated with the illegal reproduction of motion picture movies and professionally licensed recorded music.

(Id. ex. pg. 5.)

Officer Land asked Plaintiff if he wished to make a statement and what he would do with "a 100 stack of blank DVDs." (Id. ¶ 15.) Plaintiff responded that he "would take [a] majority of

them and use them for [his] own personal use and would sell some of the blanks." (Id.) The Complaint states that, related to his computer-servicing business, it was "common practice" for Plaintiff to "[b]ack[] up data" onto "several blank DVDs" when "servicing [a] customer's computer systems." (Id.)

Officers boxed Plaintiff's video collection and seized it along with all of his customers' laptops that were to be serviced, a customer's DVD burn tower that had been scheduled for service upon the customer's prepayment for parts, Plaintiff's JVC DVD-player home theater system, and Plaintiff's flat-screen television. (Id. ¶ 16.) During this time, Sergeant Richardson informed Plaintiff that he would not get any of these items back. (Id.) According to the "Search Inventory and Return," the items seized under the second warrant were as follows:

1. Emachines laptop plugged into sky DVD burner
2. ~~Sky DVD burner~~ Toshiba laptop attached to black harddrive ([illegible])
3. Dell laptop attached to (2) external hard [illegible] (2) DVD burners
4. "HP" mini laptop
5. Documents
6. Dell M5030 laptop
7. Amazon DVD burner
8. Asus mini notebook PC900
9. Toshiba 40" flatscreen
10. "Copystar" 8 disc DVD burner
11. JVC XV DVD writer
12. Espon color printer
13. Estimated thousand's [sic] of un-used DVD's
14. Estimated thousand's [sic] of used DVD's.

(Id. ex. pg. 6.)

During these searches, one officer went upstairs and pushed open the unlocked door to Ms. Owens' residence. (Id. ¶ 10.) His gun was drawn, and his entry scared Ms. Owens' son, who had Attention Deficit Hyperactive Disorder and was playing a video game. (Id.)[7]

One month after the search and seizures, officers

> came with a warrant for [Plaintiff's] arrest with three indictments relating to the Manufacturing sale in [sic] conspiracy to sell illegal DVDs. This case concluded with a misdemeanor charge and a felony charge relating to illegal DVDs indicating that [Plaintiff] had over 10,000 illegal DVDs in [his] home. After sentencing the judge instructed that all illegal DVDs were to be confiscated.

(Id. ¶ 17.)

Plaintiff "presented a copy of the judge's order to be [sic] Police Department instructing the police Department to only withhold the illegal items that were in their custody." (Id. ¶ 18.) Plaintiff first received the "computer equipment and laptops." (Id.) Respecting (it seems) only the second warrant, Plaintiff later received "all of [the] items that were seized by the police department." (See id.) "They found that none of the items were . . . illegal." (Id.)

The Complaint is somewhat unclear, but it seems that the police department has returned to Plaintiff few, if any, of the items seized under the first warrant. However, in a civil forfeiture case, Plaintiff and Mrs. Carson prevailed as to $550.00 of the cash seized. (Id. ¶ 11.) According to the Complaint, during the hearing for that case, several officers "perjured themselves . . . by testified [sic] that they did knock and announce their presence and waited 15 seconds before . . . entering . . . the premises . . . ." (Id.)

---

[7] Later, Ms. Owens sent a notarized complaint to Sergeant Richardson, but that complaint was never forwarded to the Danville Police Department's Division of Professional Standards. (Compl. ¶ 10.) Captain Haley of the Division of Professional Standards, however, requested that Plaintiff "meet him at his office to officially file[] a complaint with his department . . . ." (Id.) Plaintiff "did so" and informed Captain Haley "how the officers illegally took money an[d] [Plaintiff's] cell phone . . . ." (Id.)

## II.     STANDARD OF REVIEW

The complaint is "'[t]he initial pleading that starts a civil action and states the basis for the court's jurisdiction, the basis for the plaintiff's claim, and the demand for relief.'" BP Am. Prod. Co. v. Burton, 549 U.S. 84, 92 (2006) (alteration in original) (quoting Black's Law Dictionary 303 (8th ed. 2004)). A key requirement is that a complaint "contain . . . a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." See Fed. R. Civ. P. 8(a)(2).

"The legal sufficiency of a complaint presented under Rule 8(a) is tested by a motion made under Rule 12(b)(6)." Macronix Int'l Co. v. Spansion Inc., 4 F. Supp. 3d 797, 801 (E.D. Va. 2014). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,[8] to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "'[I]mportantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" Cleaning Auth., Inc. v. Neubert, 739 F. Supp. 2d 807, 817 (D. Md. 2010) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)).

"A pro se complaint should be liberally construed." Taylor v. First Premier Bank, 841 F. Supp. 2d 931, 933 (E.D. Va. 2012). "'[L]iberal construction of the pleadings is particularly appropriate where, as here, there is a pro se complaint raising civil rights issues.'" Jehovah v.

---

[8] A "'court need not accept the [plaintiff's] legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (alteration in original) (quoting Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 616 n.26 (4th Cir. 2009)).

Clarke, 798 F.3d 169, 176 (4th Cir. 2015) (quoting Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009)). This liberal construction, however, does not suggest that courts "grant[] such litigants complete amnesty from the requirement of the rules." See 5B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1357, at 693 (2007); see also Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). A court "'cannot ignore a clear failure to allege facts' that set forth a cognizable claim," Mitchell v. N.C. Div. of Emp't Sec., 76 F. Supp. 3d 620, 624 (E.D.N.C. 2014) (quoting Johnson v. BAC Home Loans Servicing, LP, 867 F. Supp. 2d 766, 776 (E.D.N.C. 2011)), aff'd, 599 F. App'x 517 (4th Cir. 2015), and a court will not "become an advocate for a *pro se* litigant or . . . rewrite his complaint," Williams v. Guilford Tech. Cmty. Coll. Bd. of Trs., No. 1:14CV843, 2015 WL 4621924, at *4 (M.D.N.C. July 13, 2015) (publication pending). "Every party—pro se or otherwise—must comply with the Federal Rules of Civil Procedure." Mitchell, 76 F. Supp. 3d at 624.

### III. DISCUSSION

The gist of Plaintiff's Complaint is a series of alleged constitutional violations related to Defendants' searches and seizures in Plaintiff's residence on September 25, 2013. Defendants attack it on several bases,[9] which will be addressed in turn.

A. The 42 U.S.C. § 1983 Claim on Fourth-Amendment Violations

Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

---

[9] Plaintiff conceded, at oral argument, that the Complaint fails to state a claim for Defendants' violation of 46 U.S.C. app. § 322. I will dismiss the Complaint insofar as it alleges a violation of that statute.

"[T]hat section is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); see also Jean v. Collins, 221 F.3d 656, 664 (4th Cir. 2000). The Complaint focuses largely on the Fourth Amendment (as incorporated by the Fourteenth):

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.

Respecting the claims on the Fourth Amendment, Defendants argue that Plaintiff lacks standing to challenge the officers' entry into Ms. Owens' apartment or to challenge the officers' seizure of cash, that the Complaint fails to state damages, and that the Complaint does not state that Defendants acted in their official capacities. Defendants broadly contend that the Complaint fails to state any plausible claim. Defendants also contend that the Complaint fails to state misconduct by Lieutenant Smith, Officer Slover, Officer Dixon, Officer Shively, Officer Merrill, Officer Pace, or Officer Landrum.

1. Plaintiff lacks standing to challenge the officers' entry into Ms. Owens' apartment.

"Standing" describes "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." Black's Law Dictionary (10th ed. 2014).

> [T]he nature of *Fourth Amendment* standing . . . is analytically distinct from "case or controversy" standing in the Article III context. . . . [S]tanding to contest a search or seizure "is more

- 10 -
Case 4:15-cv-00037-JLK-RSB   Document 55   Filed 02/17/16   Page 10 of 18   Pageid#: 461

properly placed within the purview of substantive Fourth Amendment law than within that of [Article III] standing."

United States v. Ewing, 638 F.3d 1226, 1230 (9th Cir. 2011) (final alteration in original) (quoting Rakas v. Illinois, 439 U.S. 128, 140 (1978)).

"Fourth Amendment rights are personal in nature." Jackson v. Brickey, 771 F. Supp. 2d 593, 601 (W.D. Va. 2011). Naturally, a § 1983 plaintiff asserting a Fourth-Amendment violation must have standing to do so. The central inquiry for a search is "'whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.'" See Bonner v. Anderson, 81 F.3d 472, 475 (4th Cir. 1996) (quoting Rakas, 439 U.S. at 143). The central inquiry for a seizure is whether "'there is some meaningful interference with an individual's possessory interests in [the seized] property.'" See Altman v. City of High Point, 330 F.3d 194, 204 (4th Cir. 2003) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). One's expectation of privacy or interest in property must be "objectively reasonable; in other words, it [must be] an expectation [or interest] that society is willing to recognize as reasonable." See United States v. Castellanos, 716 F.3d 828, 832 (4th Cir.), cert. denied, 134 S. Ct. 832 (2013). For example, "[c]ourts have . . . held . . . that a landlord does not have a reasonable expectation of privacy with respect to individual apartments leased to third parties, simply on the basis that the landlord owns the apartments." Marcavage v. Borough of Lansdowne, 826 F. Supp. 2d 732, 740 (E.D. Pa. 2011) (collecting cases), aff'd, 493 F. App'x 301 (3d Cir. 2012), cert. denied, 133 S. Ct. 942 (2013). In any case, the search's or seizure's challenger bears the burden of showing, respectively, reasonable expectation of privacy or reasonable possessory interest. See Castellanos, 716 F.3d at 832.

The Complaint clarifies that Ms. Owens and her son, exclusively, occupied her second-floor apartment. Plaintiff's living area was on the first floor, and nothing suggests that he had a

reasonable expectation of privacy in Ms. Owens' apartment. This conclusion withstands consideration that Plaintiff was the property manager for the second-floor apartments. To the extent that Plaintiff seeks redress for entry into Ms. Owens' room, he lacks standing to do so. The Complaint is dismissed to this extent.

2. Plaintiff has standing to challenge the officers' seizure of cash from his pockets.

> Generally speaking, courts have implicitly assumed that an individual has a reasonable expectation of privacy with respect to those portions of his or her person that are hidden from public view, including hidden recesses in both one's clothing and body. For example, rummaging through an individual's pockets and other inner recesses of one's clothing constitutes a Fourth Amendment search of the person. Likewise, patting down an individual's outer clothing so as to discover hidden objects therein is also a Fourth Amendment search.

State v. Smith, 782 N.W.2d 913, 921 (Neb. 2010) (footnotes omitted). "[I]n the Fourth Amendment context, bailees can have a sufficient interest in bailed property to give them standing to object to its seizure or search." United States v. Perea, 986 F.2d 633, 640 (2d Cir. 1993) (collecting cases).

At this stage, the Complaint states that the cash seized was rent money under Plaintiff's lawful custody and obtained from his pockets. No alleged fact diminishes Plaintiff's expectation of privacy in his pockets' contents or his possessory interest in the rent money. He has standing to challenge the search and seizure.

3. There is no occasion to consider Defendants' challenge to damages.

"'A court . . . should not dismiss a complaint so long as it sets out facts sufficient to support a reasonable inference that the plaintiff is entitled to *any* relief the court can grant, even if that relief is not specifically requested.'" Charles v. Front Royal Volunteer Fire & Rescue Dep't, Inc., 21 F. Supp. 3d 620, 629 (W.D. Va. 2014) (quoting Int'l Fid. Ins. Co. v. Mahogany, Inc., No. CIV. JKB–11–1708, 2011 WL 3055251, at *2 n.1 (D. Md. June 25, 2011)). The

Complaint does not specifically allege damages, but the Federal Rules do not require it to do so. Whatever category or measure of damages, it is plausible, at this stage, that Plaintiff may ultimately win something.[10] There is no occasion to dismiss the Complaint on the question of alleged damages.

    4. <u>The Complaint fails to state that Defendants acted in their official capacities.</u>

Defendants contend that the Complaint fails to identify an official policy or custom under which Defendants acted and, accordingly, does not allege that they acted in their official capacities. "[O]fficial-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" <u>Ruttenberg v. Jones</u>, 603 F. Supp. 2d 844, 872 (E.D. Va. 2009) (quoting <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985)), <u>aff'd</u>, 375 F. App'x 298 (4th Cir. 2010).

> The government entity is liable only when the policy or custom is the moving force of the constitutional violation. Official capacity suits against individual public officers are based on the same standard: Because the real party in interest in an official capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law.

<u>Gayle v. City of Waynesboro</u>, No. CIV.A. 5:08CV00091, 2009 WL 672712, at *2 (W.D. Va. Mar. 13, 2009) (citations and internal quotation marks omitted). The Complaint identifies no department policy and makes no suggestion that any department policy played a part in the alleged violations of Plaintiff's constitutional rights. Insofar as Plaintiff has filed his Complaint against Defendants in their official capacities, it is dismissed. Defendants will be treated in their personal capacities.

---

[10] Assuming a constitutional violation, nominal damages, at least, are possible. <u>See, e.g.</u>, <u>Dawkins v. Huffman</u>, 25 F. App'x 107, 107 (4th Cir. 2001) (per curiam); <u>Norwood v. Bain</u>, 166 F.3d 243, 245 (4th Cir. 1999) (en banc) (per curiam).

5. <u>Defendants' overbroad argument does not suffice to dismiss the Complaint.</u>

Defendants forward a broad contention that the Complaint states insufficient facts to support any claim or theory of relief. They broadly reference Rule 8, <u>Iqbal</u>, and <u>Twombly</u> to the Complaint. Such an argument, however, does not give the Court license to rove over the Complaint so as to raise (essentially, sua sponte) any claim's weakness on any element.[11]

6. <u>Except as to the unannounced, no-knock entry, the Complaint insufficiently alleges misconduct by Lieutenant Smith, Officer Slover, Officer Dixon, Officer Shively, Officer Merrill, Officer Pace, and Officer Landrum.</u>

Defendants contend that the Complaint insufficiently states complained-of acts or omissions by several officers. Defendants observe that the Complaint does not allege any act or omission by Lieutenant Smith, Officer Slover, Officer Dixon, or Officer Shively. They add that the Complaint only reveals that Officer Merrill led Ms. Logan outside (and might have had other involvement in her arrest),[12] that Officer Pace directed Plaintiff to stay put and stay calm and that she informed him that the warrant was for the office room, and that Officer Landrum delivered

---

[11] At its most specific, the argument repeats other arguments that Plaintiff has no standing to contest the search of Ms. Owens' apartment and that, because the money and items seized either were returned to Plaintiff or were not his, there were no damages. (<u>See</u> Br. in Supp. of Mot. to Dismiss at pg. 7, Nov. 19, 2015 [ECF No. 13].)

    Setting those repeated arguments aside, the overbroad argument does too little. To illustrate, Defendants have observed that the Complaint seems to

> seek[] to claim the following as to some or all of the named Defendants: failure to knock and announce before entering [the duplex] with a search warrant; improperly serving Plaintiff with the search warrant; exceeding the scope of the search warrant and the area delineated in the search warrant; and seizing items beyond those authorized by warrant.

(<u>Id.</u> at pgs. 1–2.) Defendants' overbroad argument, however, does not tee up the Court's decision whether the allegations fail to state any particular element of any of these claims or whether the allegations otherwise fail to state these as claims. It is Defendants' burden to identify Plaintiff's specific failures in pleading, not merely to say that they exist and task the Court with searching for them.

[12] Defendants observe, correctly (though somewhat in passing), that Plaintiff lacks standing to challenge alleged violations of Ms. Logan's rights.

the already-seized cash from Officer Lancaster to other officers and relayed Plaintiff's explanation that it was rent money.

Defendants' argument is, for the most part, well taken; however, the Complaint clearly states that "ten Officers" entered the duplex "without knocking and announcing their present [sic]" and, a sentence later, describes these as "illegal actions." (Compl. ¶ 6.) The "ten Officers" corresponds with the number of Defendants and, presumably, includes each of them. Except as to Plaintiff's claim on the alleged unannounced, no-knock entry, the Court will dismiss Lieutenant Smith, Officer Slover, Officer Dixon, Officer Shively, Officer Merrill, Officer Pace, and Officer Landrum from all other claims.[13]

B. The 42 U.S.C. § 1985 Conspiracy Claim

Defendants attack the pleading of a 42 U.S.C. § 1985 conspiracy's elements and also contend that the intracorporate-conspiracy doctrine bars the claim.

> [T]he "intracorporate conspiracy doctrine" holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. In essence, this means that a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.

Balt.-Wash. Tel. Co. v. Hot Leads Co., LLC, 584 F. Supp. 2d 736, 744 (D. Md. 2008); see also Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985). "The doctrine applies to a Virginia municipality and its agents." Smalls v. Binner, No. 4:15-CV-00017, 2015 WL 8335735, at *3 (W.D. Va. Dec. 8, 2015). At all relevant times, Defendants were agents of the City of Danville

---

[13] "Misjoinder is '[t]he improper union of parties in a civil case.'" Russell v. Chesapeake Appalachia, L.L.C., 305 F.R.D. 78, 81 (M.D. Pa. 2015) (alteration in original) (quoting Black's Law Dictionary (9th ed. 2009)). "[T]he presence of 'improper parties' [is] an invalid basis for dismissal of the complaint. Misjoinder, if any, does not justify such an extreme sanction." Clay v. Martin, 509 F.2d 109, 113 (2d Cir. 1975). Instead, "[o]n motion or on its own, the court may at any time, on just terms, . . . drop a party." Fed. R. Civ. P. 21.

- 15 -

Case 4:15-cv-00037-JLK-RSB   Document 55   Filed 02/17/16   Page 15 of 18   Pageid#: 466

acting within the scope of their employment. Under the intracorporate-conspiracy doctrine, they could not have conspired among themselves. The conspiracy claim is dismissed.

C. <u>The Reply-Brief Invocations of the Sixth Amendment, Slander, Va. Code Ann. § 19.2-59, and Article I, § 10 of the Virginia Constitution</u>

Defendants observe that Plaintiff, on reply brief, potentially asserts claims on slander and on violations of the Sixth Amendment, Va. Code Ann. § 19.2-59, and Article I, § 10 of the Virginia Constitution. Defendants contend that Plaintiff has improperly stated these additional claims, which do not appear in the Complaint. Rule 8 requires "'plausibility pleading'"—not "'[n]otice pleading,'" <u>Macronix Int'l Co.</u>, 4 F. Supp. 3d at 799–800 (quoting A. Benjamin Spencer, <u>Plausibility Pleading</u>, 49 B.C. L. Rev. 431, 431–32 (2008)); however, failure to even plead notice surely undermines the pleading of plausibility.

The Complaint insufficiently presents a claim for a Sixth-Amendment violation. The Complaint's closest semblance to such a claim is, perhaps, some (incorrect) relation of the Sixth Amendment's trial protections for criminal defendants to the statement that, at a civil forfeiture hearing, multiple Defendants "perjured themselves . . . by testified [sic] that they did knock and announce their presence and waited 15 seconds before . . . entering . . . the premises . . . ." (<u>See</u> Compl. ¶ 11.) Even with the especially-liberal pleading standard, the Complaint insufficiently presents a claim on a Sixth-Amendment violation.

Nor did the Complaint fairly apprise Defendants of the state-law claims. To the extent that Plaintiff wishes to proceed on a slander claim, the Complaint suggests nothing of it. Respecting Va. Code Ann. § 19.2-59, it provides, in relevant part,

> No officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer. . . . Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages.

Article I, § 10 of the Virginia Constitution provides

> [t]hat general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted.

Although, on brief, Plaintiff seems to invoke Va. Code Ann. § 19.2-59 and Article I, § 10 of the Virginia Constitution in much the same way in which the Complaint has invoked the Fourth Amendment, the Complaint gives no indication of any state-law theory of relief.

## CONCLUSION

I will dismiss the Complaint, in part, as follows:

- as to the 46 U.S.C. app. § 322 claim,
- to the extent that the 42 U.S.C. § 1983 claim seeks redress for the entry into Ms. Owens' apartment,
- to the extent that the 42 U.S.C. § 1983 claim targets Defendants in their official (rather than personal) capacities,
- as to the 42 U.S.C. § 1985 claim, and
- to the extent that the Complaint seeks redress for slander, violation of the Sixth Amendment, violation of Va. Code Ann. § 19.2-59, or violation of Article I, § 10 of the Virginia Constitution.

In addition, the following parties will be dropped from all claims in this case except for the one on the alleged unannounced, no-knock entry: Lieutenant Smith, Officer Slover, Officer Dixon, Officer Shively, Officer Merrill, Officer Pace, and Officer Landrum. Some claims remain unscathed,[14] so Defendants' motion does not dispose of the case.

---

[14] Either for Defendants' failure to challenge them or for the present motion's failure to defeat them, I observe that several claims remain before the Court. To my understanding, those remaining claims are for

1. the officers' entry into Plaintiff's residence without knocking or announcing their presence;
2. improper service of the search warrant;
3. the search of Plaintiff's pockets and the seizure of cash and cell phones;
4. the seizure of ammunition, dies, and a gun; and

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to pro se plaintiff and all counsel of record.

Entered this 17th day of February, 2016.

s/Jackson L. Kiser<br>
SENIOR UNITED STATES DISTRICT JUDGE

---

5. the inventory of DVDs before the second warrant was obtained.